**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **EDWARD R. CLARK** | § | |
| **TDCJ-CID #565410** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-08-045** |
| | § | |
| **BRAD LIVINGSTON, ET AL.** | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN ACTION**

This case was filed as a civil rights action by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No.104-134, 110 Stat. 1321(1996) ("PLRA"), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), cert. denied, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court dismiss plaintiff's § 1983 claims for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). It is respectfully recommended further that plaintiff's claims under the Americans

with Disabilities Act ("ADA") be retained, and service ordered on Brad Livingston in his official capacity.

**I. Jurisdiction.**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

**II. Factual Allegations.**

Plaintiff is a former prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division, (TDCJ-CID). He has since been released to mandatory supervision, and is currently living in a half-way house in Dallas, Texas. He has approximately six more years to serve on his mandatory supervised release term.

Plaintiff filed this action on March 12, 2008, naming the following defendants: Brad Livingston, TDCJ Director ; Mr. John Doe, TDCJ Deputy Director of Classification and Records; and Dr. Maximilliano Herrera. (D.E. 1). A Spears[1] hearing was conducted on May 2, 2008. At the hearing, plaintiff orally moved to dismiss his claims against Dr. Herrera. The following allegations were made in plaintiff's original complaint or at the Spears hearing:

Plaintiff is diabetic and controls his blood sugar with oral medication. He also has hypertension, and several work-related restrictions, such as no heavy lifting over 25 pounds, no climbing, no bending, no extreme sunlight exposure, and no excessive noise. Prior to May 1, 2007, plaintiff was incarcerated at the Chasefield Trusty Camp in Beeville, Texas. While at

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

Chasefield, plaintiff experienced a period of time where his blood sugar was not controlled, and it was necessary for him to receive insulin. As a result of this episode, he was transferred to the McConnell Unit where it was believed his health could be better monitored.

In September 2007, a McConnell Unit Classification Committee ("UCC") approved plaintiff's request to attend a pre-release facility, operated by Correctional Corporation of America("CCA"), at the Segovia Unit in Edinburg, Texas. At the pre-release facility, plaintiff could take educational and vocational courses. Had plaintiff been able to attend the pre-release facility, he would have earned street time credit and would have been able to serve his sentence in full prior to his now 2014 projected release date. The State UCC, however, failed to act upon his application, and he never had the opportunity to attend the classes and to earn street time.

On August 24, 2007, plaintiff filed a Step 1 grievance complaining that the State UCC had refused to give him a hearing on his request for CCA placement. (See D.E. 1, Ex. A). He complained that the State UCC's refusal to let him participate in vocation or educational training was because of his diabetes, and as such, in violation of federal law prohibiting discrimination based on an individual's disabilities, in particular, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. By response dated October 1, 2007, Warden Mendoza wrote:

> Investigation has revealed that you are currently an S2/G1 offender. It is unclear to the classification office as to why you would like to be reviewed by UCC; therefore; therefore, you will not be scheduled until clarification is received. No further action taken.

(D.E. 1, Ex. A).

On October 4, 2007, plaintiff filed a Step 2 grievance. (D.E. 1, Ex, B). Plaintiff explained that, although the McConnell UCC had approved his transfer to a CCA, the State UCC had failed to take any action. By response dated November 14, 2007, the Region IV Director stated that plaintiff had been properly reviewed by the McConnell UCC on September 11, 2007. That is, the Regional Director did not address plaintiff's complaint concerning the inaction by the State UCC.

Plaintiff points out that he worked as a supply clerk at the McConnell Unit, and he is often required to lift boxes that are heavier than his 25-pound restriction. He also notes that he is ***not*** insulin-dependent, and that his transfer to the McConnell Unit was in error. He argues that, if he can perform the type of work he performed at the McConnell Unit, he should have been allowed to attend the vocational/education training at a CCA facility, and that the State's refusal to let him participate in a prerelease CCA program amounts to discrimination based on his perceived disabilities. He seeks declaratory relief, as well as compensatory and punitive damages.

## III. Discussion.

### A. Legal standard.

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). The Supreme Court has held that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state

law." West v. Atkins, 487 U.S. 42, 48 (1988)(per curiam) (citations); accord Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. Id.

**B. Constitutional right to education and vocation training**.

The State of Texas has no constitutional obligation to provide basic educational or vocational training to prisoners. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988). Once the state provides such a program, the denial of an opportunity to participate does not implicate a liberty interest unless there is a significant and atypical hardship on the inmate in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 484(1995); see also Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause is not implicated by eligibility for rehabilitative programs). The denial of participation in a educational program does not present the type of "significant and atypical hardship" that would constitute a denial of due process. See Farley v. McCroy, No. 94-3014, 1995 WL 445692, at *1 (7th Cir. July 21, 1995) (holding that denial of continued participation in educational programs did not violate due process under Sandin). Consequently, plaintiff's claim that he was denied prerelease vocational or education training fails to state a constitutional violation. Thus, to the extent plaintiff has challenged the inaction of the State UCC as unconstitutional, it is recommended that those claims be dismissed.

**C. Americans with Disabilities Act.**

Title II of the Americans with Disabilities Act (ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individuals." 42 U.S.C. § 12102. To establish a valid claim under Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against be defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. Lightbourn v. County of El Paso, Texas, 118 F.3d 421, 428 (5th Cir. 1997). The Supreme Court has held that Title II of the ADA applies to state prison facilities and state prison services. See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998).

The ADA provides that "[a] State shall not be immune under the eleventh amendment ... from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has accepted this statement as an unequivocal expression of Congress' intent to abrogate state sovereign immunity. United States v. Georgia, 546 U.S. 151, 154 (2006) (citation omitted) . However, the Court in Georgia held open the question of whether Congress's abrogation of sovereign immunity is valid with respect to conduct that arguably violates the ADA, but does not violate the

constitution. Georgia, 546 U.S. at 159, 160 n. * ("Title II prohibits 'a somewhat broader swath of conduct than the Constitution itself forbids.'" ) (citation omitted). Because Title II's prohibits a wider range of activities than the constitution, the Supreme Court held that courts are to determine the following "on a claim by claim basis:"

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such conduct also violated the Fourteenth Amendment [or Constitution]; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment [or Constitution], whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Id. at 159.

Applying the Supreme Court's ruling in Georgia to the instant case, it appears that too many issues remain unresolved at this early state of the proceeding to determine whether plaintiff's ADA claims survive § 1915A screening. For example, it must be determined whether Title II is even implicated, by considering whether plaintiff is in fact a "qualified individual with a disability" for the purposes of the ADA, whether he met the essential eligibility requirement for participation in the vocational/educational program, and whether he was in fact denied participation in the program based on his diabetes. If it is determined that there is an otherwise colorable Title II claim, then it must be determined whether the State's Eleventh Amendment immunity has been abrogated with respect to claims such as the one plaintiff asserts, in that his claim, as discussed above, does not implicate any constitutional right. However, those and other relevant issues are more appropriately considered after further development of plaintiff's claims and the underlying facts.

Therefore, it is respectfully recommended that plaintiff's ADA claims for damages against the State of Texas via Brad Livingston in his official capacity be retained, and service ordered on this defendant.

## IV. Recommendation.

For the foregoing reasons, it is respectfully recommended that defendant Dr. Herrera be dismissed upon plaintiff's own motion. It is respectfully recommended further that plaintiff's § 1983 claims be dismissed for failure to state a claim pursuant to 28 U.S.C. § § 1915(e)(2)(B)(i) and 1915A. Finally, it is respectfully recommended that plaintiff's ADA claims against the State of Texas via Brad Livingston in his official capacity be retained, and service ordered on this defendant.

Respectfully submitted this 1st day of July, 2008.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).