**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **EDWARD R. CLARK,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. NO. C-08-45** |
| | § | |
| **BRAD LIVINGSTON, ET AL.,** | § | |
| **Defendants.** | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this prisoner litigation, plaintiff claims that defendants violated his rights pursuant to the United States Constitution and the Americans With Disabilities Act ("ADA") (D.E. 1).  On March 13, 2009, defendant Livingston moved for summary judgment on plaintiff's ADA claims.  (D.E. 44).  On May 6, 2009, plaintiff filed a response (D.E. 47).  For the reasons stated herein, it is respectfully recommended that defendant's motion be granted.

**I.  JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

**II.  BACKGROUND**

At all times relevant to the facts of this lawsuit plaintiff was an inmate of the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and was

incarcerated in Beeville, Texas.  He filed suit on February 6, 2008, naming as defendants Brad Livingston, TDCJ Director, Dr. Maximilliano Herrera, and Mr. John Doe, Deputy Director of Classification and Records.  (D.E. 1).  He claimed that he had been improperly classified as an insulin-dependent diabetic, and as a result had been denied the opportunity to participate in a pre-release vocational program.  Id. at 4-8.  On May 2, 2008, a Spears hearing was held.[1]  At the hearing, plaintiff orally moved to dismiss his claims against Dr. Herrerra.  (D.E. 16, at 2).  Following the hearing, on July 1, 2008,  a memorandum and recommendation was entered recommending that plaintiff's § 1983 claim against Mr. Doe for failing to provide him with pre-release education or vocational training be dismissed for failure to state a claim.  Id. at 5.  It was further recommended that plaintiff's motion to voluntarily dismiss defendant Herrera be granted, and plaintiff's official capacity claim against Mr. Livingston asserting a violation of his rights pursuant to the ADA be retained.  Id. at 8.  The District Court has not yet acted on this recommendation.  In the meantime, service was ordered on Director Livingston, and pending is the Director's motion for summary judgment on plaintiff's ADA claims (D.E. 44).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

## III. <u>PLAINTIFF'S ALLEGATIONS</u>

Plaintiff is a diabetic whose blood sugar is controlled by oral medication.  <u>Id.</u> at 2.
He also has medical restrictions that limit lifting to twenty-five pounds and prohibit him
from climbing, bending, extreme sunlight exposure, and excessive noise.  <u>Id.</u>  Until May
1, 2007, he was assigned to the Chasefield Trusty Camp in Beeville, Texas.  <u>Id.</u>  While at
Chasefield, he experienced a period of uncontrolled blood sugar and required insulin.  <u>Id.</u>
at 2-3.  As a result, he was transferred to the McConnell Unit where his health could be
monitored.  <u>Id.</u> at 3.

In September 2007, a Unit Classification Committee ("UCC") approved plaintiff's
request to attend a pre-release facility, where he could take educational and vocational
classes.  <u>Id.</u>  Had he been allowed to attend the facility, plaintiff would have accrued
street time and would have served his sentence in full prior to his current projected
release date of 2014.  <u>Id.</u>  However, the State UCC failed to act on the application.  <u>Id.</u>

On August 24, 2007, plaintiff filed a Step 1 grievance complaining that the State
UCC had refused to give him a hearing on his request for placement in a pre-release
facility.  (D.E. 1, Ex. A).  He asserted that the State UCC's refusal to allow him to
participate in pre-release education or vocational training was due to his diabetes, and was
therefore a violation of the ADA.  <u>Id.</u> at 1.  On October 1, 2007, plaintiff received a
response indicating that it was unclear why he would like to be reviewed by UCC and,
therefore, a review would not be scheduled until clarification was received.  <u>Id.</u> at 2.

On October 4, 2007, plaintiff filed a Step 2 grievance explaining that, while the McConnell UCC had approved his transfer to a pre-release facility, the State UCC had failed to take any action.  (D.E. 1, Ex. B).  On November 14, 2007, he received a response indicating that he had been properly reviewed by the McConnell UCC on September 11, 2007.  Id. at 2.  Plaintiff's assertion that the State UCC had failed to take any action on his application was not addressed.

Plaintiff argues that he is not insulin-dependent, he is able to work, and that he frequently lifts weight in excess of his medical restrictions.  (D.E. 1, at 4-8).  He asserts that the State's refusal to allow him to participate in a pre-release education or vocational program is the result of discrimination based on a perceived disability.  Id.  He seeks declaratory relief, as well as compensatory and punitive damages.  (D.E. 16, at 4).

## IV.  <u>DISCUSSION</u>

**A.    Summary Judgment Standard Of Review.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Courts must consider the record as a whole, considering all pleadings, depositions, affidavits, and admissions on file in the light most favorable to the non-movant.  <u>Caboni v. General Motors Corp.</u>, 278 F.2d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

## B.    Violation of the Constitution

To the extent that plaintiff has alleged that his constitutional rights have been violated, he cannot prevail.  As set forth in the memorandum and recommendation entered July 1, 2008 (D.E. 16), the State of Texas has no constitutional obligation to provide basic education or vocational training to prisoners.  Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988).  Once the state provides such a program, there is no liberty

5

interest implicated unless denial of participation would create an atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life.  See Sandin v.

Connor, 515 U.S. 472, 484 (1995); see also Moody v. Daggett, 429 U.S. 78, 88 n. 9

(1976) (The Due Process Clause is not implicated by eligibility for rehabilitative

programs).  The denial of participation in an educational program does not present the

type of "significant and atypical hardship" that would constitute a denial of due process.

See Farley v. McCoy, No. 94-3014, 1995 WL 445692, at * 1 (7th Cir. July 21, 1995)

(holding that denial of continued participation in educational programs did not violate due

process under Sandin).

C.      **Plaintiff's ADA Claim**

        Plaintiff asserts that defendant violated his rights pursuant to the ADA when he

refused to allow him to participate in a pre-release education or vocational program due to

his diabetes.  (D.E. 1, at 4-8); (D.E. 16, at 2-3).  The ADA provides that "[a] State shall

not be immune under the eleventh amendment ... from an action in Federal or State court

of competent jurisdiction for a violation of this chapter."  42 U.S.C. § 12202.  The

Supreme Court has accepted this statement as an unequivocal expression of Congress's

intent to abrogate state sovereign immunity.  United States v. Georgia, 546 U.S. 151, 154

(2006) (citation omitted).  However, the Georgia Court held open the question whether

Congress's abrogation of sovereign immunity is valid with respect to conduct that

arguably violates the ADA, but does not violate the Constitution.  Id. at 159 (citations

omitted).  Because Title II prohibits a wider range of activities than the Constitution, the

6

Supreme Court held that courts are to determine the following "on a claim by claim

basis":

> (1) which aspects of the State's alleged conduct violated Title
> II; (2) to what extent such conduct also violated the
> [Constitution]; and (3) insofar as such misconduct violated
> Title II but did not violate the [Constitution], whether
> Congress's purported abrogation of sovereign immunity as to
> that class of conduct is nevertheless valid.

Id.

As established earlier, the conduct complained of by plaintiff does not violate the

Constitution.  The next step is to determine whether plaintiff can establish a prima facie

case that defendant, while not violating the Constitution, in fact violated Title II of the

ADA.  Defendant argues that plaintiff failed to establish a prima facie case pursuant to the

ADA.

Title II of the ADA provides that "no qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by

such an entity."  42 U.S.C. §12132.  Disability is defined as "a physical or mental

impairment that substantially limits one or more of the major life activities of such

individuals . . . or being regarded as having such an impairment."  42 U.S.C. § 12102(2).

To establish a valid claim pursuant to Title II of the ADA, a plaintiff must show that (1)

he is a qualified individual with a disability (or regarded as such) within the meaning of

the ADA; (2) he was excluded from participation in or denied meaningful access to

services, programs, and activities, or that he was otherwise discriminated against by the

defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of

his disability.  Lightbourn v. County of El Paso, Texas, 118 F.3d 421, 428 (5th Cir. 1997)

(parenthetical material supplied).

Here, plaintiff failed to establish a prima facie case pursuant to the ADA.  First,

plaintiff failed to establish that he suffers from a disability within the meaning of the

statute.  As the Fifth Circuit has explained, not every impairment, even if severe, is a

disability within the meaning of the ADA.  See, e.g., Bridges v. City of Bossier, 92 F.3d

329, 334 (5th Cir. 1996) (hemophilia); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d

755, 759 (5th Cir. 1996) (ankle problems); Ellison v. Software Spectrum, Inc., 85 F.3d

187, 191 (5th Cir. 1996) (breast cancer); Oswalt v. Sara Lee Corp., 74 F.3d 91, 92 (5th

Cir. 1996) (high blood pressure).  Rather, plaintiff must demonstrate that his condition

significantly impairs a major life activity.

Plaintiff's alleges that while in prison he was not impaired by diabetes and was

capable of working  (D.E. 1, at p. 4 of 5(A)1).  In fact he worked as a supply clerk in the

prison warehouse.  Id.  Then in his response to the motion for summary judgment plaintiff

states he was disabled (D.E. 47 at 2).  As proof of his disability, plaintiff attached to his

summary judgment response a letter from the Social Security Administration, but that

letter concerns a fee agreement with his attorney.  (D.E. 47, at 5).  It is impossible to tell

from the attachment whether Plaintiff's diabetes was determined to be disabling, and even

if so, whether plaintiff was determined to be disabled while in prison and during the time

period relevant to this lawsuit.  Whether plaintiff takes pills or insulin shots to control his diabetes, he has still failed to show that his condition significantly impairs a major life activity.

Moreover, plaintiff provides no evidence to support his claim that he was prevented from participating in a pre-release education or vocational program because of defendant's actual or mistaken belief that he was an insulin-dependent diabetic or that he suffered from any disability.  First, he provides no evidence that defendant in fact believed that he was insulin-dependent or that he was regarded as an insulin dependent diabetic.  The medical records provided by plaintiff do not indicate that he requires insulin.  (See D.E. 1, Ex. C).  Second, he alleges only that the State UCC failed to act on the transfer approved by the McConnell UCC.  (D.E. 16, at 2-3).  He fails to provide any evidence that the State UCC refused to approve the transfer because of his diabetes, or because of the mistaken belief that he was disabled by his diabetes.  Accordingly, plaintiff has not established a prima facie claim for violation of the ADA.  It is therefore unnecessary to determine whether the ADA validly abrogated sovereign immunity for conduct that violates the act but does not violate the Constitution.[2]

---

[2] The Courts of Appeal have not directly addressed the issue of whether the ADA validly abrogates state sovereign immunity for conduct that violates the Act but does not violate the Constitution.  However, two district courts have held that Title II of the ADA is not a congruent and proportional exercise of Congress's power pursuant to § 5 of the Fourteenth Amendment where it is invoked to address conduct that does not violate the Constitution, and therefore fails the test of City of Boerne v. Flores, 521 U.S. 507 (1997). See, e.g., Hale v. Mississippi, No. 2:06cv245-MTP, 2007 WL 3357562 (S.D. Miss. Nov. 9, 2007); Chase v. Baskerville, 508 F. Supp.2d 492, 506 (E.D. Va. 2007).

## V.  <u>CONCLUSION</u>

For the reasons stated herein and in the memorandum and recommendation entered July 1, 2008 (D.E. 16), it is respectfully recommended that defendant's motion for summary judgment (D.E. 44) be granted, and that all claims against all defendants be dismissed with prejudice.

Respectfully submitted this 17th day of June 2009.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).